PATRICK E. HIGGINBOTHAM, Circuit Judge,
concurring:
While I agree with the panel opinion, I write separately to note my misgivings about excessive reliance on the judicially created Dost factors that continue to pull courts away from the statutory language of 18 U.S.C. § 2251.
There are many reasons to be cautious of the Dost factors, several of which other courts have previously identified.[1] As ju *829 rists, we have “every reason to avoid importing unnecessary interpretive conundrums into a statute, especially where the statute employs terms that lay people are perfectly capable of understanding,”[2] such as “lascivious.” The Dost factors are not definitionally equivalent to the statutory standard of “lascivious exhibition of the genitals,” but many courts have treated them as such, even requiring that a certain number of factors be present for pornography convictions. As a result, these factors often create more confusion than clarity.
The sixth factor, which asks whether the visual depiction was intended to elicit a sexual response in the viewer, is especially troubling. Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused,[3] and this Dost factor encourages both judges and juries to improperly consider a non-statutory element. A pedophile may be aroused by photos of children at a bus stop wearing winter coats, but these are not pornographic. Conversely, a photographer may be guilty of child pornography even though he is not aroused by the photos he produces purely for financial gain. Regardless of whether the photographer was aroused by the images he produced, to qualify under § 2251, the images must show a minor being used to engage in sexually explicit conduct.
Our court first used the Dost factors in United States v. Carroll[4] In response to a request for rehearing en banc, the Carroll decision was altered by the panel, but the section citing the Dost factors was reinstated. In his original panel dissent, Judge Garwood steered away from these factors and noted that § 2251 “unambiguously requires that ... the minor must actually do something — ‘engage in’ — which constitutes actual or simulated sexually explicit conduct.”[5] In its en banc brief, the Government conceded the statute required that the image show a minor who engaged in sexually explicit conduct:
After a thorough and searching review of the plain wording of 18 U.S.C. § 2251(a) and the legislative history addressing it at the time it was enacted ... the government concedes, that a violation of Section 2251(a) requires that the defendant employ, use, persuade, induce, entice or coerce the minor himself to engage in the actual or simulated sexually explicit conduct for the purpose of producing a visual depiction of the minor’s sexually explicit conduct.[6]
I agree with our panel’s opinion today that an unaware minor may be used to produce child pornography, but even so, the statute requires that the image display sexually explicit conduct. The statute does not suggest that the definition of pornography is contingent upon what arouses the defen *830 dant, especially if the defendant is aroused by objectively asexual images.
As this court noted in Grimes, § 2251 supports a finding that one who inappropriately films a minor for his own sexual pleasure may not be convicted of child pornography unless the images display a minor being used to engage in sexually explicit conduct.[7] The statute’s definition of sexually explicit conduct includes a “lascivious exhibition of the genitals or pubic area” — not a lascivious exhibition of winter coats, children’s faces, or even breasts, but a lascivious exhibition of the pubic area. The video of C.B. contains no such exhibition. That is the most important “factor” this court should consider because it derives from the statute, not a lonely decision of a district court.
APPENDIX: Description of C.B. Video
The entire video is 44 seconds long. Below is a description of how the video progresses by the seconds.
Seconds 1-14: Blurry views of the tanning room and ceiling.
Second 15: Tanning bed comes into view.
Seconds 18-21: C.B.’s arm and part of her hair is visible.
Second 21: A more extended part of the C.B.’s back (including her lower back) and long hair may be seen.
Seconds 22-26: Blurry view of the ceding.
Seconds 27-34: C.B. comes into view, and she is bending down toward the ground (and toward the camera). The video displays her head, back, and top of her buttocks for about two seconds. She stands up, turning away from the camera and towards the tanning bed; the video does not display any part of the front of her body.
Second 35: C.B. moves out of camera’s view (only the tanning bed is visible).
Second 37: C.B. sits into the tanning bed; her hair, stomach, and upper thigh are visible. Her pubic region is not visible because of how she is seated and the camera angle.
Second 38: The camera moves; C.B. is not visible.
Second 39: C.B. is fully nude lying on her back in the tanning bed. Her breasts are in the center of the shot, and her pubic region is visible on the far right side of the frame. Her legs are outside the camera’s view.
Second 40: The camera is moved, and the view of C.B. is partially obstructed by the wall partition. Her face is visible, but half of her body is hidden. (Part of her pubic region and left breast are visible for about half of a second.)
Second 41: C.B. closes the tanning bed and can no longer be seen.
Seconds 42-44: Blurry view of the ceiling.

. See United States v. Rivera, 546 F.3d 245, 250-52 (2d Cir.2008) (describing criticisms of the Dost factors from several courts). Rivera cites, among others, the Ninth Circuit, which found the Dost factors were "over-generous to the defendant” and the First Circuit, which noted the risk that the factors would "be used to inappropriately limit the scope of the statutory definition.” United States v. Wiegand, *829 812 F.2d 1239, 1239 (9th Cir.1987); United States v. Frabizio, 459 F.3d 80, 88 (1st Cir.2006).

. Frabizio, 459 F.3d at 88.

. Cf. United States v. Viliard, 885 F.2d 117, 125 (3d Cir.1989) ("We must, therefore, look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand — a legal analysis of the sufficiency of the evidence of lasciviousness.”); see also United States v. Amirault, 173 F.3d 28, 34-35 (1st Cir.1999) (citing Viliard).

. United States v. Carroll, 190 F.3d 290, 293 (5th Cir.1999), vacated in part, reinstated in relevant part by 227 F.3d 486, 488 (5th Cir. 2000) (per curiam).

. 190 F.3d 290, 298-99 (5th Cir.1999) (Garwood, J., dissenting).

. 227 F.3d 486, 488 n. 2 (5th Cir.2000), vacating 190 F.3d 290 (5th Cir.1999) (quoting the Government's en banc brief).

. United States v. Grimes, 244 F.3d 375, 380 (5th Cir.2001).